## TROY BODAK ET AL. *v.* VITO MASOTTI
### (5576)

DUPONT, C. J., BORDEN and STOUGHTON, Js.

Argued February 11—decision released May 3, 1988

*Neil F. Murphy, Jr.,* with whom were *Philip N. Walker,* and, on the brief, *Lawrence J. Kiel,* for the appellants (plaintiffs).

*Joseph F. Skelley, Jr.,* with whom, on the brief, were *Patrick O'Sullivan, Deborah L. Bradley* and *Carl F. Yeich,* for the appellee (defendant).

STOUGHTON, J. The plaintiffs appeal from a judgment rendered on a jury verdict in favor of the defendant. We find no error.

The plaintiffs claim that the court erred (1) in failing to set aside the verdict because improper comments

by defense counsel induced the jury to reach its conclusion through speculation, surmise or conjecture, (2) in denying the plaintiffs' motion in limine and permitting cross-examination which exceeded the scope of direct examination of a witness, (3) in excluding evidence of an alleged spontaneous utterance of a witness, (4) in excluding testimony by the minor plaintiff as to an alleged spontaneous utterance by him, and (5) in its charge permitting the jury to consider a special defense raising a violation of General Statutes § 14-222 as applied to the minor plaintiff, who was racing his bicycle.

This action arose out of a collision which occurred on August 23, 1982, at a T-intersection in Bristol between a bicycle being ridden by the minor named plaintiff, eight year old Troy Bodak, and a pickup truck being driven by the defendant. The trial was hotly contested and the evidence sharply disputed. From the evidence which was offered, the jury might reasonably have found the following facts.

Peck Lane is a public street in Bristol which runs north and south in the vicinity of its intersection with Maywood Lane. Maywood Lane is a dead-end street which runs east and west and intersects at its east end with Peck Lane. Maywood Lane slopes generally downward toward the intersection, and Peck Lane slopes upward to the south from the vicinity of the intersection. In that vicinity, the speed limit on Peck Lane is thirty miles per hour.

During the early afternoon of August 23, 1982, the defendant was driving his truck in a southerly direction along Peck Lane and travelling at twenty-five to thirty miles per hour. Troy Bodak and Marcel Dionne, another boy of about the same age, both of whom lived on Maywood Lane, were racing on their bicycles down Maywood Lane toward the intersection with Peck

Lane. The other boy was able to stop before entering Peck Lane, but Bodak skidded on some sand close to the intersection and his foot slipped off the pedal. He saw the truck as he entered the intersection, but he could not avoid it. The defendant did not see the bicycle before it entered the intersection and a collision occurred.

In a substitute complaint, the plaintiffs alleged that the defendant was negligent in that (1) he failed to yield the right-of-way to the bicycle, (2) he operated his vehicle recklessly, (3) he failed and neglected to keep his vehicle under proper control and turn his vehicle, (4) he was inattentive and failed to keep a proper lookout, and (5) he operated his vehicle at a greater speed than was reasonable.

The defendant, by way of special defense, claimed that the minor plaintiff was negligent, reciting substantially similar specifications of negligence.

After a trial, the jury returned a verdict for the defendant. The plaintiffs moved to set aside the verdict, and this appeal followed the denial of their motion.

I

The plaintiffs' first claim is that the trial court ought to have set aside the verdict because the jury could not have found for the defendant except through speculation induced by improper comments of counsel. The thrust of the plaintiffs' argument is that the testimony of the plaintiffs was credible, while the credibility of the defendant had been destroyed. Arguing from that premise, a most infirm foundation given the unquestioned right of the jury to determine credibility, the plaintiffs assert that the defendant introduced facts not in evidence during his argument to the jury. This tactic, say the plaintiffs, required that the court issue a

curative instruction which was more detailed than its general admonition to disregard matters not in evidence.

Practice Book § 4065 (d) (2) provides that when error is claimed in a case, the brief or appendix shall include the objection, the ruling, any exception and a statement of any relevant evidence where necessary to understand the ruling. It is not enough simply to refer in the brief to pages of the trial transcript. *Shenefield* v. *Greenwich Hospital Assn.,* 10 Conn. App. 239, 243, 522 A.2d 829 (1987). We will not ordinarily consider claimed errors on the part of the trial court unless it appears that the question was distinctly raised at the trial and was ruled upon adversely to the appellant's claim. *State* v. *Simms,* 170 Conn. 206, 208, 365 A.2d 821, cert. denied, 425 U.S. 954, 96 S. Ct. 1732, 48 L. Ed. 2d 199 (1976). The reason for this rule is so that the trial court may be alerted to an error while there is time to correct it. *State* v. *Rogers,* 9 Conn. App. 208, 212, 518 A.2d 399 (1986), cert. denied, 202 Conn. 806, 520 A.2d 1288, cert. denied, 481 U.S. 1051, 107 S. Ct. 2185, 95 L. Ed. 2d 841 (1986).

The plaintiffs in their brief have quoted only one remark from the defendant's argument: "We call this a dart out . . . somebody darts out from between two parked cars." The full quotation is as follows: "This is an unfortunate accident. This is what we call a dart out. Somebody darts out from an intersection; somebody darts out from between two parked cars." The plaintiffs did not object to this argument at the time it was made, nor did they complain about it at the conclusion of the arguments. After a discussion between court and counsel, the plaintiffs' counsel said specifically: "We have avoided the—we call this a duck out case." The plaintiffs' claim has not been properly preserved for review, but even if it had been, we do not consider it to be of merit.

After the arguments had taken place, there was an off-the-record conference between the court and counsel concerning the charge to be given. It is obvious that the trial court attempted to resolve some of the conflicting claims made by counsel at this conference. Thereafter, the court entertained comments on the record, and counsel for the plaintiffs complained that during argument counsel for the defendant brought up a formula which was confusing and improper, and the plaintiffs' counsel said: "[T]hat's what we objected to . . . ." We take this to be an objection to a portion of the defense counsel's argument, although the record is far from clear on this point. The objection was that no expert had testified to the time it would take a vehicle to travel a particular distance.

During his argument to the jury, the defense counsel made the following observation: "Now, we'll talk about measurements, ok? If you can do long division, and I'm sure you all can, and you take 5280, which is how many feet is in a yard, and divide it by 60, which is 60 miles an hour, you can discover that a vehicle going 60 miles an hour, covers 88 feet in a second. And a truck or car going half that speed covers half that distance, 44 feet in a second. Now, we know, at least we have uncontradicted testimony, that Mr. Masotti said he was going 25 to 30 . . . ." It is true that this is confusing because it uses "yard" where it should have used "mile," and because it omits some steps in the calculation. Nevertheless, it is a familiar formula and reaches a correct result. Defense counsel excepted to the charge as follows: "And the second is to the fact that the court did not accept or, I should say charge out, what we objected to strenuously in terms of counsel's discussion of measurement, distance, time—effectively a mathematical formula that was not in evidence."

The jury members were capable of transposing miles per hour to feet per second through the use of figures and methods known to elementary school children, and there was no impropriety in suggesting that they do so.

The plaintiffs also complain that the defense counsel referred to potential psychological problems of a witness and broached the concept of pecuniary interest. They have not printed the argument to which they object, nor did they raise this claim before the trial court. Therefore, we decline to consider it.

## II

The plaintiffs next claim that the trial court erred in refusing to grant a motion in limine by which they sought to limit cross-examination of a police officer. The record contains no written motion in limine filed by the plaintiffs. In their brief, the plaintiffs assert that they called Kenneth Samele, a police officer, in order to have him describe the scene of the accident. They claim that the court erred in permitting the defense counsel to go beyond the scope of the direct examination, to establish a point of impact through Samele, and to elicit comments from Samele on the operation of the defendant's vehicle.

The plaintiffs have printed only one of the questions asked of Samele, together with the objection thereto.[1] They have not printed any of his answers, any other

---

[1] The plaintiffs have printed only the following excerpt from Samele's testimony:

"Q. And it's true, is it not that in addition to interviewing him you did other things as part of your investigation of this accident?

"Mr. Murphy: Objection, Your Honor. Leading question.

"Mr. O'Sullivan: This is cross-examination, Your Honor.

"Mr. Murphy: It's cross-examination but as the Court well knows he's effectively using the officer as his witness at this juncture.

"The Court: I know. I indicated previously that I would allow full direct and cross-examination by both counsel of this police officer.

"So objection overruled."

objections to questions, any other rulings by the court or any exceptions. For the reasons stated earlier, these claims of the plaintiffs are simply not reviewable.

Even if there were a ruling of the court which had been properly preserved for review, our reading of the transcript demonstrates that, outside the presence of the jury, the plaintiffs' counsel asked Samele if he had determined what he thought was the point of impact, and in the presence of the jury asked Samele whether he had taken measurements from which he could estimate how far he found Bodak from a corner of the intersection. These questions opened the door sufficiently so that defense counsel could explore the measurements which in fact were taken from what Samele thought was the point of impact.

### III

The plaintiffs also claim that the court erred in excluding certain testimony which they have characterized as spontaneous utterances.

The first of these statements was made by Marcel Dionne to his mother about twenty minutes after the accident. After Dionne had run to his house to get a pillow for Bodak, and after the ambulance had arrived, Mrs. Dionne went home with Dionne. Two policemen went along and questioned Dionne about what had happened. After Dionne had given some information, his mother decided that the boy was becoming hysterical and she told the police to leave. Dionne then told his mother that the man in the truck was not looking. The plaintiffs sought to introduce this statement as a spontaneous utterance.

Whether the utterance was spontaneous and made without opportunity for deliberation and reflection is a question for the trial judge, and his conclusion controls unless it be found to have been an unreasonable

exercise of discretion. *State* v. *Chesney,* 166 Conn. 630, 634, 353 A.2d 783, cert. denied, 419 U.S. 1004, 95 S. Ct. 324, 42 L. Ed. 2d 280 (1974); *Perry* v. *Haritos,* 100 Conn. 476, 485, 124 A. 44 (1924). We find no such abuse of discretion. In any event, Dionne had testified similarly before the jury. Ordinarily, a party may not strengthen the testimony of a witness by showing that he had made previous statements to the same effect. *State* v. *Pollitt,* 205 Conn. 61, 76, 530 A.2d 155 (1987); *State* v. *Harris,* 10 Conn. App. 217, 237, 522 A.2d 323 (1987).

The plaintiffs also claimed at trial that Dionne had been impeached by the suggestion of bias because of his friendship with Bodak, and that the statement was admissible as a prior consistent statement to rehabilitate the witness. This exception to the general rule does not apply unless the claimed bias has arisen after the making of the statement. *State* v. *Pollitt,* supra, 77. The plaintiffs claim in their brief, for the first time, that the statement should have been admitted as a response to a suggestion of recent fabrication. See *State* v. *Dolphin,* 178 Conn. 564, 568 n.5, 424 A.2d 266 (1979). Since this claim was not made in the trial court we refuse to consider it. *State* v. *Simms,* supra, 208. Furthermore, there was no finding by the trial court that the witness had been impeached by a suggestion of recent fabrication, and such a finding must be made before the prior consistent statement can be admitted. *State* v. *Ouellette,* 190 Conn. 84, 98, 459 A.2d 1005 (1983).

The second of the claimed spontaneous utterances was made by Bodak in the hospital recovery room. The boy remembered being in the ambulance, waking up in the operating room, and then waking up in the recovery room. At that time, he saw his mother and his godmother, and he remembered telling his mother that the driver of the truck was not looking because he did not

want to be blamed for riding on Peck Lane. The trial court did not abuse its discretion in deciding that this was not a spontaneous utterance. Bodak testified at the trial, as did Dionne, that the defendant was looking to his left at the time of the accident. The plaintiffs have claimed in their brief that the statement made by Bodak at the hospital was admissible for rehabilitative purposes. We have examined the transcript of Bodak's testimony and find that no such claim was made in the trial court. Therefore, we decline to consider it now.

## IV

Finally, the plaintiffs claim that the court erred in charging that the minor plaintiff who was racing his bicycle could be guilty of reckless driving pursuant to General Statutes § 14-222.

Practice Book § 4065 (d) (2) requires that when error is claimed in the charge to the jury, the brief or appendix shall include a verbatim statement of all relevant portions of the charge and all relevant exceptions to the charge. The plaintiffs have failed to comply with this rule. References in their brief to pages in the transcript do not constitute compliance. *Shenefield* v. *Greenwich Hospital Assn.*, supra, 243. Furthermore, we have examined the transcript and conclude that the trial court was not clearly alerted by any exception to the charge to the claim made in the brief that the operator of a bicycle could not be guilty of reckless driving.

There is no error.

In this opinion the other judges concurred.